IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BRENDA BATES, as Representative of the Estate of Jimmy Atchison, and on behalf of his minor children; and LAKEISHA JAMES,<br><br>    Plaintiffs,<br><br>    v.<br><br>SUNG KIM; KELLY LAMBERT; MARK GARDNER; CHRISTIAN MALSTROM; SCOTT PRIESTLY; MATTHEW WINN; and OFFICERS JOHN DOE # 1–5,<br><br>    Defendants. | CIVIL ACTION NO.<br>1:20-cv-4074-AT |

## **ORDER**

This matter is before the Court on Defendants Mark Gardner, Christian Malstrom, and Scott Priestly's ("moving Defendants") Amended Motion for Judgment on the Pleadings ("MJP") as to one of Plaintiffs' claims. [Doc. 107]. For the reasons set forth herein, the Motion is denied.

## I. Introduction

This case arises from a law enforcement action that led to the fatal shooting of Jimmy Atchison on January 22, 2019 in Atlanta, Georgia. Plaintiff Brenda Bates brings claims both as executor of Mr. Atchison's estate and on behalf of his two minor children, S.M. and J.J. (Am. Compl., Doc. 63 ¶ 12). Plaintiff Lakeisha James is the mother of Mr. Atchison's minor son, J.J. (*Id.* ¶¶ 13, 26). She, along with J.J.,

resided in the apartment at which Defendants attempted to execute an arrest warrant for Mr. Atchison on January 22, 2019. (*Id.* ¶¶ 13, 26).

Plaintiffs filed suit against the City of Atlanta and various federal task force officers who took part in the action.[1] The Complaint originally included ten claims. One claim was brought against the City of Atlanta. (*See id.* ¶¶ 128-149). The remaining claims were alternatively pleaded under 42 U.S.C. § 1983 ("Section 1983") and *Bivens*[2] against the various individual officers, as well as common law assault, common law battery, and wrongful death claims that Plaintiffs raised specifically against the officer who shot Mr. Atchison, Sung Kim. (*Id.* ¶¶ 92-127, 150-86).

## A. Background

The facts, as stated in the Amended Complaint,[3] were detailed in the Court's prior substantive Orders in the case, and the Court incorporates those by reference here. (*See* August 26, 2021 Order, No. 1:20-CV-4074-AT, 2021 WL 5034837, at *1 (N.D. Ga. Aug. 26, 2021) ("*Bates I*"); March 7, 2022 Order, 591 F. Supp. 3d 1355,

---

[1] A number of the officers involved in the action, including the three moving Defendants, were "deputized" Atlanta Police Department officers serving as members of the Federal Bureau of Investigation's ("FBI") "Atlanta Metro Major Offender" ("AMMO") task force at the time. (Am. Compl., Doc. 63 ¶ 2).

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

[3] As the Court noted in its prior order, "the Amended Complaint is substantively identical to the original complaint," aside from one correction not relevant to the Court's determination here. *Bates v. Kim*, 591 F. Supp. 3d 1355, 1360 (N.D. Ga. 2022). On a Rule 12(c) motion, as on a Rule 12(b)(6) motion, the Court accepts the facts set forth in the operative complaint as true. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

1357 (N.D. Ga. 2022) ("*Bates II*")). The Court highlights several specific facts relevant to the Court's determination in this Order.

Mr. Atchison had arrived at Ms. James's residence on the morning of January 22, 2019 to provide childcare for her two children (including for Mr. Atchison and Ms. James's shared minor son, J.J.), while Ms. James worked. (Am. Compl., Doc. 63 ¶ 58). The officers had obtained only an arrest warrant for Mr. Atchison, not a search warrant for Ms. James's apartment. (*Id.* ¶ 58). As the Court discussed in *Bates II*, the Amended Complaint alleges,

> The warrant was then executed . . . in a raid performed by officers participating in the FBI Atlanta Metro Major Offender Task Force. (*Id.* ¶¶ 25–26.) Kim was the officer responsible for organizing the raid, which took place at approximately 7:30 A.M. (*Id.* ¶¶ 1, 54.) Defendants did not obtain a search warrant for James's apartment beforehand, nor did they seek James's consent to search the apartment. (*Id.* ¶ 60.)
> . . .
> After arriving at James's apartment, Defendants broke down the door to apprehend Atchison, who was present in the apartment. (*Id.* ¶ 57.)

591 F. Supp. 3d at 1359. The three moving Defendants (among others), according to the Amended Complaint, "kicked in the door of Plaintiff James's apartment without a warrant and while her two small children were present inside," "entered . . . knowing that they did not have a search warrant," "knowing that they did not have [Ms. James's] consent to do so," and "knowing that she had a privacy interest therein" (and Mr. Atchison did not). (Am. Compl., Doc. 63 ¶¶ 175, 177-180). This allegedly "warrantless, nonconsensual, and illegal entry" into Ms. James's

3

apartment caused "damage to her property, emotional distress, mental anguish, stress, inconvenience, and other damages." (*Id.* ¶ 181).

## B. Relevant Procedural History

On August 26, 2021, the Court issued an Order dismissing the City of Atlanta from the case on the ground that Plaintiffs' constitutional claims were more properly raised as *Bivens* claims against the individual officers, not Section 1983 claims. *See Bates I*, 2021 WL 5034837, at *7. Plaintiffs elected to continue pursuing their constitutional claims as *Bivens* claims against the individual officers.[4]

Relevant here, Claim 9 was brought under Section 1983 for the Defendants' entry into Ms. James's apartment without a search warrant, and Claim 10 was brought under *Bivens* for the same conduct.[5] Several of the individual Defendants (Mark Gardner, Christian Malstrom, and Scott Priestly, and separately, Kelly Lambert and Matthew Winn) then moved to dismiss Plaintiffs' Claims 9 and 10 against them. (Docs. 37, 47). As to Claim 9, they sought dismissal due to the Court's determination that a *Bivens* claim was the proper vehicle for suit, rather than Section 1983. Plaintiffs did not oppose dismissal of this claim, and the Court granted it. *Bates II*, 591 F. Supp. 3d at 1361.

---

[4] The case remains stayed as to Plaintiffs' claims against Officer Sung Kim only, due to the pending criminal case against him. (*See* Doc. 109).

[5] It appears that Claims 9 and 10 were brought only by Ms. James, although they seemingly could have been asserted by Ms. Bates acting on behalf of Ms. James and Mr. Atchison's minor son, J.J., as well. (*see* Am. Compl., Doc. 63 at 48, 50 (stating that Claims 9 and 10 are "by Plaintiff James")).

4

As to Claim 10, brought under *Bivens*, these Defendants contended that they were entitled to qualified immunity (and, for some of the Defendants, quasi-judicial immunity) on this claim. *See Bates II*, 591 F. Supp. 3d at 1361. In March 2022, the Court denied the motion to dismiss, finding that these individual Defendants were not entitled to a finding of qualified immunity or quasi-judicial immunity based on the allegations in the Amended Complaint. *Bates II*, 591 F. Supp. 3d at 1361. In denying the motion, the Court found:

> [R]ead in the light most favorable to Plaintiffs, the allegations in the Amended Complaint suggest that Atchison was a "guest" in James's apartment rather than a "co-resident" of the apartment. Assuming for purposes of the pending motions to dismiss that this was in fact the case, it is clearly established law that a search warrant was required in these circumstances. *See Risse*, 83 F.3d at 216 (noting that "if the suspect is just a guest of the third party, then the police must obtain a search warrant for the third party's dwelling," but "if the suspect is a co-resident of the third party, then *Steagald* does not apply, and *Payton* allows both arrest of the subject of the arrest warrant and use of evidence found against the third party"). Therefore, assuming that the facts alleged in the Amended Complaint are true, and construing those facts in the light most favorable to Plaintiffs, James has plausibly alleged that Defendants' search of her apartment violated her clearly established Fourth Amendment rights.

*Bates II*, 591 F. Supp. 3d at 1365-66.

Now, these moving Defendants have moved for judgment on the pleadings and "dismissal of Plaintiffs' Amended Complaint" on the basis that legal developments since this *Bivens* claim was filed now bar the claim. (Doc. 107). For the reasons below, the Motion is denied.

5

## II. Legal Standard

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)); *see also Roma Outdoor Creations, Inc v. City of Cumming, Ga.*, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008) ("A complaint should be dismissed only 'when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.'" (quoting *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993))). In determining whether a party is entitled to judgment on the pleadings, the Court accepts as true all material facts alleged in the non-moving party's pleading, and the Court views those facts in the light most favorable to the non-moving party. *Id.* (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).

The legal standard for assessing a motion for judgment on the pleadings is the same as the standard for a motion to dismiss under Rule 12(b)(6). *Hawthorne*, 140 F.3d at 1370. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is not bound, however, to accept as true a legal conclusion couched as a factual allegation.

*Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, at 679.

### III. Discussion

To begin, though the Motion is not entirely clear on this point, the Court understands the Motion to apply only to Claim 10 under *Bivens* against the moving Defendants. (*See* Defs.' Mem. of Law in Supp. of MJP, Doc. 107 at 5 ("The lone *Bivens* claim pleaded against the[se] Defendants boils down to knowingly entering Plaintiff Lakeisha James' apartment where there were valid arrest[] warrants, but there was no search warrant.")). Plaintiffs have responded to the Motion (Doc. 112), and moving Defendants have replied. (Doc. 113). The Court finds, at this stage, that no dispositive issue of law requires dismissal of this claim.

#### A. *Bivens*

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the Supreme Court recognized an implied damages remedy for Fourth Amendment violations committed by federal officials, similar to the statutory remedy available against state actors under 42 U.S.C. § 1983. 403 U.S. 388 (1971). In *Bivens*, agents with the now-defunct Federal Bureau of Narcotics,[6] acting under federal authority, "entered [Mr. Bivens's] apartment and arrested him for alleged narcotics

---

[6] The Federal Bureau of Narcotics was a predecessor agency to today's Drug Enforcement Administration. *See* Department of Justice Organization, Mission, and Functions Manual, Drug Enforcement Agency, https://www.justice.gov/doj/organization-mission-and-functions-manual-drug-enforcement-administration (last visited February 20, 2024). It has occasionally (apparently erroneously) been referred to as "FBI" in courts' factual descriptions of *Bivens*. *See, e.g.*, *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1860 (2017) (referring to *Bivens* as "a claim against FBI agents for handcuffing a man in his own home without a warrant").

violations." *Id.* at 389. The agents then "manacled [him] in front of his wife and children, and threatened to arrest the entire family," and "searched the apartment from stem to stern." *Id.* Mr. Bivens's "affidavit . . . sw[ore] that the search was 'without cause, consent or warrant[.]'" *Id. at* 390, n.1. Mr. Bivens was then "taken to the federal courthouse[,] . . . interrogated, booked, and subjected to a visual strip search." *Id.* at 389.

Mr. Bivens sued for violation of his Fourth Amendment rights based on the fact that his arrest and the search of his apartment were done without a warrant, as well as that unreasonable force was used in arresting him. *Id.* The Supreme Court held that Mr. Bivens could make a claim for money damages against the federal officers based on their violation of his Fourth Amendment rights.

The Supreme Court began its opinion by reciting a portion of the text of the Fourth Amendment: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *Id.* It continued: "[i]n *Bell v. Hood*, . . . we reserved the question whether violation of that command [the Fourth Amendment] by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct. **Today we hold that it does**." *Id.* (emphasis added) (citing *Bell v. Hood*, 327 U.S. 678 (1946)).

The agents had argued that Mr. Bivens could obtain money damages "to redress invasion of these rights only by an action in tort, under state law, in the state courts" — and that the agents could defend such a suit by asserting that they

8

acted in a "valid exercise of federal power." *Bivens*, 403 U.S. at 390-91. If it was shown that the agents had violated the Fourth Amendment, however, "such a defense would be lost to them and they would stand before the state law merely as private individuals." *Id.*

The Supreme Court rejected the agents' position, finding that endorsing such a scheme would place the relationship between a citizen and a federal agent in a position "no different" than that between two private citizens. *Id.* at 392. In the Supreme Court's view, "[a]n agent acting [] unconstitutionally [] in the name of the United States possesses a far greater capacity for harm than an individual trespasser exercising no authority other than his own." *Id.* Further, noting the inconsistency of some state laws, the Supreme Court explained, "the Fourth Amendment operates as a limitation upon the exercise of federal power regardless of whether the State in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged in by a private citizen. It guarantees to citizens of the United States the **absolute right** to be free from unreasonable searches and seizures carried out by virtue of federal authority." *Id.* (emphasis added).

The Supreme Court concluded, while "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation[,] . . . 'it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such

9

invasion, federal courts may use any available remedy to make good the wrong done.'" *Id.* at 396 (quoting *Bell*, 327 U.S. at 684).

### B. Evolution of the *Bivens* Remedy

In the more than fifty years since *Bivens*, the Supreme Court has expressly extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and later to a claim for deliberate indifference to a serious medical need by an inmate, *Carlson v. Green*, 446 U.S. 14, 18-23 (1980). Neither of those extensions is relevant here.

More recently, the Supreme Court has repeatedly declined to expand the *Bivens* remedy. *See, e.g.*, *Silva v. United States*, 45 F.4th 1134, 1138 (10th Cir. 2022) (citing *Bush v. Lucas*, 462 U.S. 367, 374-80 (1983); *Chappell v. Wallace*, 462 U.S. 296, 298-305 (1983); *United States v. Stanley*, 483 U.S. 669 (1987)). And within the last ten years, the Supreme Court has expressed hostility toward the *Bivens* remedy in general. *See Ziglar v. Abbasi*, 582 U.S. 120 (2017); *Hernandez v. Mesa*, 589 U.S. ----, 140 S. Ct. 735 (2020); *Egbert v. Boule*, 596 U.S. 482 (2022) (describing the Supreme Court as "long past 'the heady days in which this Court assumed common-law powers to create causes of action[.]'" (quoting *Corr. Services Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring))).

In *Ziglar*, the Supreme Court announced a two-part test for determining whether a *Bivens* claim should proceed. 137 S. Ct. at 1859. First, courts must determine whether the case presents a new *Bivens* context. *Ziglar*, 582 U.S. at 139.

If the case differs "in a meaningful way" from the three recognized *Bivens* cases decided by the Supreme Court, "then the context is new." *Id.* at 139-40. The meaning of "new context" is "broad," *see Hernandez*, 140 S. Ct. at 743, and might include

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139-40. In *Hernandez*, the Supreme Court noted that a *Bivens* "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. To illustrate the point, in both *Hernandez* and *Egbert*, the Court declined to recognize *Bivens* claims brought for alleged Fourth Amendment violations, finding that each of those cases represented a new context. *Hernandez*, 140 S. Ct. at 743-44 (plaintiffs' "cross-border shooting claims" represented "a world of difference" from three cases recognizing *Bivens* remedy due, in part, to "the [significant] risk of disruptive intrusion by the Judiciary into the functioning of other branches"); *Egbert*, 596 U.S. at 494 (noting that the Court of Appeals had correctly found that the plaintiff's claim "presented a new context for *Bivens* purposes").

Second, if the case does present a new context, the court must then consider whether "special factors" not present in other *Bivens* cases counsel against extending the *Bivens* remedy. *Ziglar*, 582 U.S. at 136-37. This "special factors" inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. at 492 (citing *Ziglar*, 582 U.S. at 136-37). If a court concludes that there is a reason to pause before applying *Bivens* in a new context or to a new class of defendants, the court should reject the request. *Hernandez*, 140 S. Ct. at 743.

Most recently, in *Egbert v. Boule*, the Supreme Court effectively collapsed *Ziglar*'s two-part analysis: "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492. Indeed, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 487.

In addition, the Supreme Court emphasized that "a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the Executive to provide, 'an alternative remedial structure.'" *Id.* at 493 (quoting *Ziglar*, 582 U. S. at 137; citing *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988)). "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493.

12

As the Supreme Court has now repeatedly stated, recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *Id.* (quoting *Ziglar*, 582 U.S. at 135). But the Supreme Court has so far declined to explicitly overturn *Bivens*. As it stated in *Ziglar*,

> [I]t must be understood that this opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose. *Bivens* does vindicate the Constitution by allowing some redress for injuries, and it provides instruction and guidance to federal law enforcement officers going forward. The settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are powerful reasons to retain it in that sphere.

*Ziglar*, 582 U.S. at 134; *see also Malesko*, 534 U.S. at 70-71 ("[t]he purpose of *Bivens* is to deter individual federal officers from committing constitutional violations . . . . *Meyer* also made clear that the threat of suit against an individual's employer was not the kind of deterrence contemplated by *Bivens*." (citing *FDIC v. Meyer*, 510 U.S. 471 (1994))).

Now, in light of *Egbert*, which was decided after this case was filed, moving Defendants have asked the Court to consider whether Ms. James's *Bivens* claim against them remains viable.

### C. Analysis of Plaintiff's Claim

Even with the restriction of *Bivens* in recent years, the Court cannot conclude based on the pleadings that this claim differs "in a meaningful way" from *Bivens* itself, such that judgment on the pleadings must be granted to the moving Defendants.

13

Moving Defendants point primarily to another case from this district, *Robinson v. Heinze*, in support of their argument that this *Bivens* claim is precluded. 655 F. Supp. 3d 1276 (N.D. Ga. 2023), *appeal docketed*, No. 23-10719 (11th Cir. March 3, 2023). To be sure, the overall factual scenario in *Robinson* does bear some resemblance to this case. But the facts of *Robinson*, as they relate to this claim by Ms. James, are quite dissimilar to the facts alleged here.

In *Robinson*, the plaintiff's decedent, Jamarian Robinson, was at his girlfriend's apartment when officers involved in a U.S. Marshals task force attempted to execute arrest warrants against him. 655 F. Supp. 3d at 1277-78. A "gunfight" between Mr. Robinson and the officers ensued, during which the officers shot and killed him. *Id.* But the *Bivens* claim in that case was brought by Mr. Robinson's mother based on the alleged violations of Mr. Robinson's constitutional right against law enforcement's use of excessive force. *Id.*

The district court in *Robinson* found that Mr. Robinson's mother could not bring a Fourth Amendment *Bivens* claim based on excessive force because, under *Egbert*, the context of the claim was "meaningfully different" from *Bivens*. "[C]ritically," the district court stated, "this case concerns a gunfight between a fugitive and U.S. Marshals, which differs greatly from the arrest in *Bivens*." *Id.*

Moving Defendants note, "*Robinson* did not address whether or not the subject of the search warrant lived at, or was merely present at, the search location presumably because such is not a material matter." (Defs.' Reply, Doc. 113 at 5). The Court disagrees with this misleading characterization of *Robinson* as it relates

14

to Ms. James's allegations. Ms. James is not in the same position as the plaintiff in *Robinson* was. Crucially, in *Robinson*, no unlawful entry or search was at issue at all — only the allegedly excessive force used against Mr. Robinson.

Here, as already discussed, Ms. James's Fourth Amendment right against unreasonable search of her home is at issue. *See Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) ("Our cases make it clear that 'Fourth Amendment rights are personal rights[.]'" (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969))); *Carpenter v. United States*, 585 U.S. 296, 304 (2018) (citing *Katz v. United States*, 389 U.S. 347 (1967) for the proposition that "official intrusion into that private sphere [when an individual has a reasonable expectation of privacy] generally qualifies as a search and requires a warrant supported by probable cause")). She has alleged that Defendants had only an arrest warrant for Mr. Atchison (a non-resident) and not a search warrant at the time they entered her apartment. *Bates II*, 591 F. Supp. 3d at 1359. In this circumstance, the existence of an arrest warrant for Mr. Atchison is irrelevant to her claim as alleged.

As the Court previously found, this scenario falls within the rule of *Steagald v. United States*: "when the defendants [] entered a third-party's home to apprehend the subject of an arrest warrant, . . . they relied on the warrant as legal authority to enter the home of a third person based on their belief that [the suspect] might be a guest there." *Id.* at 1363 (quoting 451 U.S. 204, 213 (1981)). But the Supreme Court stated in *Steagald* that "while the [arrest] warrant may have protected [the subject of the arrest warrant] from an unreasonable seizure, it did

absolutely nothing to protect [the third-party homeowner's] privacy interest in being free from an unreasonable invasion and search of h[er] home." *Id.* (quoting 451 U.S. at 213).

The Court held that it was clearly established under *Steagald* that "absent consent or exigent circumstances, a search warrant is required when law enforcement officers seek to apprehend the subject of an arrest warrant at a third-party residence," and found that given this law, Ms. James had plausibly alleged that Defendants' entry into her apartment violated her clearly established Fourth Amendment Rights. *Id.* at 1363, 1365. The Court therefore denied qualified immunity to these Defendants at the motion to dismiss stage. *Id.* Ms. James's claim is based entirely on Defendants' warrantless entry into her home — a context that fits well within the bounds of *Bivens* itself. *See Deavers v. Martin*, 629 F. Supp. 3d 389, 402 (S.D.W. Va. 2022) (finding that a plaintiff's unreasonable search and seizure claims under *Bivens*, even post-*Egbert*, "fit rather neatly into the original *Bivens* action").

Even if the Court were to find that this *Bivens* claim does arise in a new context, none of the differences provided by the Supreme Court in *Ziglar* as "meaningful" alter the analysis here. The Court, even in considering the "non-exhaustive" nature of the list provided in *Ziglar*, has identified no other meaningful differences or special factors that would counsel hesitation.

The Court addresses the two items raised by Defendants in particular. First, the Court finds no binding law to indicate that because this case involved deputized

Atlanta Police Department officers acting as FBI agents, rather than Federal Bureau of Narcotics agents (notably, a now non-existent agency), it must dismiss this claim because the moving Defendants represent a new "class" or "category" of defendants. *See Egbert*, 596 U.S. at 492. The examples pointed to by the Supreme Court in that regard are *Malesko*, 534 U.S. at 63 (declining to extend *Bivens* to "allow recovery against a private corporation operating a halfway house" on behalf of the Bureau of Prisons) and *Ziglar*, 582 U.S. at 140 (declining to extend *Bivens* to claims by foreign nationals against various executive officials and wardens involved in detaining them after the September 11 attacks). *See Egbert*, 596 U.S. at 492. Each of those cases involved categories of defendants (and numerous other considerations) not present in this case.

Second, moving Defendants have not pointed to any alternative remedial structure that would disallow this *Bivens* claim. Moving Defendants cite the availability of "trespass," "conversion," or "other similar common law tort[s] against individuals" as an alternative remedy. (Defs.' Mem. of Law in Supp. of MJP, Doc. 107 at 13-14). But these are the exact types of claims that the Supreme Court squarely rejected as alternatives for redressing Fourth Amendment violations in *Bivens*, and they are not remedies that "Congress already has provided, or has authorized the executive to provide." *See Bivens*, 403 U.S. at 391 ("We think that respondents' thesis rests upon an unduly restrictive view of the Fourth Amendment's protection against unreasonable searches and seizures by federal agents, a view that has consistently been rejected by this Court."); *Egbert*, 596 U.S.

17

at 493. Moving Defendants mention, in passing, that "[t]o the extent Plaintiff chose not file a complaint with executive actors or the city or the APD, it was her choice" not to do so — but they make no assertion about the availability of such a complaint mechanism as an actual alternative remedy. (Defs.' Mem. of Law in Supp. of MJP, Doc. 107 at 14). Defendants have not identified other special factors that the Court finds would preclude this claim.

The Court finds that Plaintiff James's *Bivens* claim, as alleged in the Amended Complaint, is not precluded by Supreme Court or other binding precedent. The Court expresses no opinion about the ultimate probability of success of such a claim, particularly with regard to damages. Further, the resolution of the pending appeal in *Robinson* by the Eleventh Circuit might alter the Court's conclusion that no binding precedent bars this claim. For now, however, Ms. James's claim may proceed.

**IV.   Conclusion**

Moving Defendants Mark Gardner, Christian Malstrom, and Scott Priestly's Motion for Judgment on the Pleadings [Doc. 107] is **DENIED**.

**IT IS SO ORDERED** this 19th day of March, 2024.

*/s/ Amy Totenberg*
**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**